UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

FREDERICK OWEN JEFFERSON,                    Case No. 3:23-cv-01661-MTK

        Plaintiff,                          **OPINION AND  ORDER**

    v.

MULTNOMAH COUNTY SHERIFF
DEPARTMENT; NICOLE MORRISSEY
O'DONNELL; DEPUTY ON DUTY THAT
NIGHT; NURSE ON DUTY THAT NIGHT,
 in their official duties and capacities,

        Defendants.

_____

KASUBHAI, District Judge.

      Plaintiff, a self-represented adult in custody (AIC), filed this action pursuant to 42 U.S.C.

§ 1983 and alleged that officials at the Multnomah County Detention Center (MCDC) exhibited

deliberate indifference to his medical needs in violation of the Fourteenth Amendment.

Defendants now move for summary judgment. Upon review of the record and the parties'

arguments, Plaintiff fails to raise a genuine issue of material fact to defeat summary judgment,

and Defendants' motion is GRANTED.

**- 1 -   OPINION AND ORDER**

## BACKGROUND

On May 31, 2023, Plaintiff was arrested and detained at the MCDC in downtown Portland. Pedro Decl. ¶ 8 & Ex. 5 (ECF No. 35). Later that day, Plaintiff was assessed by Nurse Lyons in the MCDC holding area. Plaintiff reported a recent broken nose that caused headaches and breathing issues, high blood pressure, back and knee pain, and an infection in his right breast. Lawson Decl. Ex. 1 at 9-12 (ECF No. 33). Plaintiff reportedly took medication for the infection and for pain. *Id.* Ex. 1 at 10.

The next morning, on June 1, 2023, Plaintiff reported pain in his chest and abdominal area. According to Deputy Sacirovic, Plaintiff pressed his "call light" and began yelling and banging on his cell door. Sacirovic Decl. ¶ 3 & Ex. 1. As Deputy Sacirovic waited for a nurse to arrive, Plaintiff reportedly said to her, "I'll kill you." *Id.*

Nurse Takahashi responded to the call. Plaintiff reported sharp pain in his right lower chest radiating to his right shoulder and shoulder blade and stated that he "almost threw up." Lawson Decl. Ex. 1 at 12-13. Based on Plaintiff's previous behavior and threat, Deputy Sacirovic would not allow Nurse Takahashi to fully enter Plaintiff's cell for an examination. Sacirovic Decl. ¶¶ 3-4 & Ex. 2. Nurse Takahashi took Plaintiff's vital signs and noted that Plaintiff's oxygen levels were low even though he appeared to be breathing regularly. Lawson Decl. Ex. 1 at 12-13. Plaintiff told Nurse Takahashi that the pain seemed to be moving "downward" and he appeared to be in less pain. *Id.* Ex. 1 at 13. Nurse Takahashi gave Plaintiff antacids.

A few hours later, Plaintiff reported continuing stomach pain and Deputy Diaz called for a medical response. Lawson Decl. Ex. 1 at 13. Nurse Redman responded to the call and noted that Plaintiff appeared to be sleeping on his mattress. *Id.* Ex. 1 at 14. Plaintiff reported that he

- 2 -     **OPINION AND ORDER**

recently ingested crack cocaine, and Nurse Redman thought Plaintiff was "probably detoxing" and "at risk for withdrawal." *Id.* Nurse Redman prescribed a suboxone protocol to treat Plaintiff's potential withdrawal symptoms, and Plaintiff received this treatment several times throughout the day. *Id.* Ex. 1 at 14-15; Pl.'s Response Ex. 1 (ECF No. 53-1).

Later that evening, Deputy Diaz requested another medical response due to Plaintiff's complaints of increased pain and report of vomiting blood. Lawson Decl. Ex. 1 at 14. Nurse O'Connor responded and found Plaintiff "moaning in pain" and stating that he had been "vomiting blood since yesterday." *Id.* Ex. 1 at 15. Nurse O'Connor observed blood on the cell floor and ordered an emergency room evaluation. *Id.* Ex. 1 at 16. MCDC officials transported Plaintiff to a local hospital where he underwent emergency surgery for a gastric ulcer.

## DISCUSSION

Plaintiff alleges that Defendants' delay in transporting him to the hospital constituted deliberate indifference to his serious medical needs and resulted in hours of unnecessary pain. Defendants move for summary judgment on grounds that Plaintiff has failed to name a Defendant who can be held liable under § 1983. Alternatively, Defendants argue that MCDC officials acted appropriately and that the undisputed facts fail to establish a violation of Plaintiff's constitutional rights.

To prevail on their motion, Defendants must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendants must present evidence of record, together with affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If Defendants meet this burden, the burden shifts to Plaintiff to demonstrate the

- 3 -     **OPINION AND ORDER**

existence of a genuine issue of fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see* Fed. R. Civ. P. 56(c)(1).

The Court must construe the evidence and all reasonable inferences in favor of Plaintiff, the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec*, 475 U.S. at 587 (citation and quotation marks omitted).

Because Plaintiff is self-presented, the Court construes his pleadings liberally and affords him the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 882-83 (9th Cir. 1991). However, Plaintiff still has the "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011).

### A.  Claims against Multnomah County and Sherriff Morrissey-O'Donnell

Defendants first argue that Plaintiff cannot sustain claims against Sheriff Morrisey-O'Donnell or Multnomah County. Defendants are correct.

It is well established that liability under § 1983 arises upon a showing of personal participation by each defendant, and a supervisor – such as a sheriff – is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff presents no evidence that Sheriff Morrissey-O'Donnell personally participated in any decision involving his medical care on June 1, 2023. Instead,

- 4 -    OPINION AND ORDER

Plaintiff apparently sues the sheriff based on her supervisory status, which is not a valid basis for § 1983 liability.

To sustain a § 1983 claim against a municipal entity such as Multnomah County, Plaintiff must present facts giving rise to a reasonable inference that (1) the County had a policy, custom, or widespread practice that caused the violation of Plaintiff's constitutional rights; (2) the County failed to properly train its officers and the failure to train amounted to deliberate indifference to Plaintiff's rights; or (3) the individual who violated Plaintiff's constitutional rights had final policy-making authority or ratified a subordinate's unconstitutional decision or action. *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 691 (1978); *Rodriguez v. Cnty. of Los Angeles,* 891 F.3d 776, 802-03 (9th Cir. 2018). Plaintiff presents no evidence that Multnomah County caused the violation of his constitutional rights through an unconstitutional policy or custom, by failing to train its deputies or medical providers, or by an official with final policy-making authority.

Accordingly, summary judgment is granted with respect to Plaintiff's claims against Sheriff Morrissey-O'Donnell and Multnomah County.

### B.  Claims Against Doe Defendants

The remaining defendants are two unnamed Doe Defendants – a nurse and deputy who were "on duty" and allegedly failed to provide Plaintiff with adequate medical attention. Plaintiff has not filed a motion to add or substitute new parties in place of these Doe Defendants. Defendants thus argue that summary judgment is appropriate because Plaintiff has not properly identified an individual who allegedly violated his rights.

In response, Plaintiff seeks to substitute Deputies Diaz and Sacirovic and Nurses Takahashi, Redman, and O'Connor in place of the Doe Defendants. *See* Pl's Response at 2 (ECF

- 5 -   **OPINION AND ORDER**

No. 53). Notably, Plaintiff did not identify or move to substitute these parties before the close of

discovery, despite the Court's July 2024 Order informing Plaintiff that he could seek to identify

the Doe Defendants through discovery requests. *See* Order dated July 29, 2024 (ECF No. 31).

Plaintiff could have also discerned the identities of the Doe Defendants by obtaining his own

medical records from MCDC. *See* Lawson Decl. Ex. 1. Adding new Defendants at this stage

would require another round of service, discovery, and dispositive motions, and Plaintiff has not

shown good cause or excusable neglect for his delay.

Even if the Court allowed the substitution of Defendants in light of Plaintiff's self-

represented status, such amendments would be futile because the record fails to support a claim

for deliberate indifference. *See Nunes v. Ashcroft*, 375 F.3d 805, 809 (9th Cir. 2003) (stating that

futility "alone can justify the denial of a motion for leave to amend").

Under the Fourteenth Amendment's Due Process Clause, pretrial detainees have a right

against jail conditions that "amount to punishment." *See Pierce v. Cnty. of Orange*, 526 F.3d

1190, 1205 (9th Cir. 2008). An objective standard applies to conditions of confinement claims

brought under the Fourteenth Amendment. *Gordon v. County of Orange*, 888 F.3d 1118, 1124-

25 (9th Cir. 2018). Under this standard, a pretrial detainee must show:

> (i) the defendant made an intentional decision with respect to the conditions under
> which the plaintiff was confined; (ii) those conditions put the plaintiff at
> substantial risk of suffering serious harm; (iii) the defendant did not take
> reasonable available measures to abate that risk, even though a reasonable official
> in the circumstances would have appreciated the high degree of risk involved –
> making the consequences of the defendant's conduct obvious; and (iv) by not
> taking such measures, the defendant caused the plaintiff's injuries.

*Id.* Ultimately, the plaintiff must present facts "showing at least reckless disregard for inmates'

health or safety." *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 928 (9th Cir. 2021).

"The 'reckless disregard' standard is a formidable one. Neither 'mere lack of due care,' nor 'an

**- 6 -    OPINION AND ORDER**

inadvertent failure to provide adequate medical care,' nor even '[m]edical malpractice,' without more, is sufficient to meet this standard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 636 (9th Cir. 2021) (citations omitted).

The undisputed facts show that MCDC deputies called for medical assistance in response to Plaintiff's complaints of pain, and that MCDC nurses assessed Plaintiff's symptoms and prescribed treatment they deemed appropriate. Lawson Decl. Ex. 1. Based on this record, MCDC staff did not stand "idly by" and fail to respond to Plaintiff's complaints. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 680 (9th Cir. 2021) (stating that "a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition").

Plaintiff nonetheless alleges that, contrary to the medical record, he told Nurse Takahashi and possibly Nurse Redman that he had spit up blood, which should have alerted them to the presence of a medical emergency requiring immediate transport to the hospital.[1] Plaintiff asserts that Nurses Takahashi and Redman failed to document his complaints, misdiagnosed his condition, and erroneously prescribed antacids and a detox regimen, even though Plaintiff specifically stated during intake that he would not be "detoxing." Pl.'s Responses (ECF Nos. 53, 55); *see also* Pedro Decl. Ex. 1 at 1 (ECF No. 35-1).

In cases where medical providers chose "between alternative courses of treatment," the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable

---

[1] Plaintiff also moves to compel the production of "written protocol" regarding video footage, presumably arising from Defendants' previous assertion that video footage is not available. Although Plaintiff's motion is untimely, Defendants provided video retention policies in their reply and sufficiently explained why video footage does not exist. *See* Defs.' Reply at 5-6 (ECF No. 62); Gilmore Decl. Ex. 1 (ECF No. 63); Pedro Decl. Ex. 6 (ECF No. 64). Accordingly, Plaintiff's motion is moot.

- 7 -   **OPINION AND ORDER**

under the circumstances" and chosen in reckless "disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc). Here, Plaintiff's medical screening on May 31, 2023 did not reflect symptoms or a medical history that would have alerted personnel to an emerging medical condition requiring emergency treatment. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 971 (9th Cir. 2021) (stating that, "at a minimum, medical personnel at jail facilities are required to screen pretrial detainees for critical medical needs"). Further, Plaintiff's symptoms on June 1, 2023 "were consistent with opiate withdrawal protocol," and Plaintiff was treated accordingly. Lawson Decl. at 8; Pl.'s Response Ex. 1. This record does not support a finding that the prescribed treatment was medically unacceptable under the circumstances or chosen in reckless disregard of an excessive risk.

Even if MCDC nurses misdiagnosed Plaintiff's condition, a medical misdiagnosis in these circumstances suggests negligence, and negligent medical treatment does not rise to the level of a constitutional violation. *See Toguchi v. Chung*, 391 F.3d 1051, 1057-60 (9th Cir. 2004) (neither a difference of opinion concerning the course of treatment nor negligence in diagnosing or treating a medical condition amounts to deliberate indifference). At minimum, the MCDC deputies and nurses would be entitled to qualified immunity, because reasonable correctional officials in these circumstances would not have known that their responses to Plaintiff's complaints would violate his clearly established constitutional rights. *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Jurgens v. Columbia Cnty.*, No. 3:22-CV-00300-IM, 2025 WL 563769, at *7 (D. Or. Feb. 20, 2025).

/ / /

/ / /

**- 8 -    OPINION AND ORDER**

**CONCLUSION**

Defendants' Motion for Summary Judgment (ECF No. 32) is GRANTED and Plaintiff's

Motion for Discovery (ECF No. 54) is DENIED as moot. This action is DISMISSED.

IT IS SO ORDERED.

DATED this <u>29th</u> day of May 2025.


<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge

**- 9 -    OPINION AND ORDER**